Thank you both. All right, next up we have United States v. Fernando Sanchez, and we'll wait just a moment for the courtroom to clear. All right, counsel, whenever you're ready. Good morning, Your Honors. May it please the court, my name is Sarah Cain, I'm an assistant federal public defender. I'm here on behalf of the appellant Fernando Sanchez. I would like to focus my argument today on Mr. Sanchez's position that New York attempted second-degree murder is not a crime of violence. As counterintuitive as that may sound, our argument is that it can be committed by omission, and that an omission categorically cannot be a use of force. So I think this is a really hard case. It sounds funny to say that an omission could be a use of force, right? And I think that under Curtis Johnson, if we were just looking at Curtis Johnson and nothing that came afterwards, the answer would be easy, and an omission cannot be a use of force. Then we had Castleman, but Castleman I think is distinguishable because it's a misdemeanor case, right? And that's the reason why the court uses the common law definition of force. But then we have Stokeling, and frankly, I don't know where the status of the law is after Stokeling, because in Stokeling, the court says, well, we're going to use the common law definition of force, but we're going to do it because this is a burglary, right? And this is consistent with Johnson. We're not overruling Johnson. Johnson was a battery, and that's a different kind of common law definition. We don't use the common law definition of force there. So now we have second-degree murder. And to me, the answer to this question about whether or not an omission can be a use of force depends upon whether we have to look to the common law for the definition here or we don't look to the common law. And frankly, I'm a little bit confused about what the answer to that question is, so I'd be really interested in what your thoughts are on that, and also the government when it's their turn. Yes, Your Honor. I agree. I think Stokeling sheds light on what the Supreme Court considers to be the use of force, but I think Stokeling actually helps Mr. Sanchez, and that is because Stokeling talks about how the history of the ACCA, initially the predicates which enabled a 15-year minimum mandatory were robbery and burglary, and that was very important to the holding in Stokeling because basically the Supreme Court said it would not have made sense for Congress to have written away robbery. And then they get into what robbery was on the common law, but it's very specific to robbery. I think potentially could be argued to expand to crimes which require force sufficient to overcome the victim's resistance, but I think that's as broad as the Supreme Court's discussion about common law force can go, and I think the history of the ACCA backs that up. I think the history of the ACCA, again, as counterintuitive as this sounds, suggests that while, yes, for example, the Supreme Court has held that murder is a prototypically violent crime, that the ACCA started with robbery and burglary. So I think Stokeling is really based on the history of the ACCA, that that is why they decided, part of why they decided that the common law definition of robbery had to be incorporated in that, in the force clause. So I think Stokeling actually assists Mr. Sanchez as to his murder argument. So moving forward, basically this is a textual argument. The text of the force clause has the words use of physical force, and as far as I am aware, your honors would know better, cases that interpret the term physical force tell us that that requires a physical act. So Curtis Johnson cited Black's Law Dictionary for the term physical force and provided us with the definition as force consisting in a physical act, and your honors have also adopted in some of your own cases that same term, force. Yes, your honor. Can I just ask you one more question? Yes. Do you agree that the answer here rises or falls on whether we use the common law definition of force? Or do you think that there's something else that we have to consider? I don't think that there is a case that holds that the common law definition of force incorporates omissions. Castleman itself doesn't touch on omissions at all. So here's what Castleman says that makes me concerned, that it does. Castleman says, it's impossible to cause bodily injury without applying force in the common law sense, right? So if New York says that you commit second degree murder by omitting to act, and it has defined conduct as omitting to act, right? And that winds up causing someone's death, why doesn't that meet this definition where Justice Sotomayor says it's impossible to cause bodily injury without applying force in the common law sense? I think the issue is that Castleman wasn't considering omissions. So there just wasn't, they weren't talking about omissions, they were talking about indirect use of force, things like poisoning. So I just think it's not, it's essentially not fair to apply it outside of the concept of what was in front of the court in Castleman. I agree with your honor, if we're going to essentially obliterate Curtis Johnson in favor of Castleman, that yes, if we fully embrace the common law concept of force and use this Castleman phrase as broadly as possible, but I think it's important to try to cage Castleman at least into what Castleman was about. And Castleman, of course, was just a misdemeanor case. It would be more, my thought would be more to the extent that Stoeckling, to the extent that Stoeckling would stand for the proposition that the common law definition of force would be applicable here, then the common law definition of force, as the Supreme Court has discussed it, includes this statement, which I think may present the problem for your client. But I don't know, if it doesn't get down to the common law definition, then it's not an issue. I think that Stoeckling didn't go as far as overrule Curtis Johnson, and Curtis Johnson specifically said, we're rejecting the common law version of physical force. We're not applying that to the ACCA. So to the extent there's a conflict between Stoeckling and Curtis Johnson on that point, I would say Stoeckling's limited to robbery. Based on the history of the ACCA, Curtis Johnson applies to the force clause broadly, and omissions don't count. Say that again, your position is Curtis Johnson rejects the common law version of physical force. Yes, Your Honor. Let me go back, because I heard you say we want to look at the statue. Shouldn't we really start with the statue here? Yes. The New York statue for second degree murder. Shouldn't that be our focus? Yes, Your Honor. Okay. So, and how it defines second degree murder? Yes, Your Honor. Okay. So help me with this part, because it defines this as with intent to cause the death of another person, he causes the death of such person. Is that the definition we're looking at? That's the definition we're looking at. And you're saying that he can't be convicted without actually, forget about how he goes about killing the person. Let's leave that aside. Sure. Okay. Happy to. I'm kind of simple, and I start with one of the elements of this is you've got to actually and intentionally cause a person's death. Is that not an element of that crime? The intent is to cause death. No. Absolutely. And it's not an attempted murder here, is it? He was convicted? This is an attempted second degree murder. It's an attempted. So there wasn't a death. So it's about actually and intentionally your intent is to cause the death of another person. And so you either take an act or you fail to take an act. Correct. With the intent to cause the death of the other person. Is that it? Yes, Your Honor. Okay. And so we have said if you poison somebody, that qualifies, right? Yes. And I thought we had a second degree murder case. Jones. Jones. And what did we say in Jones? Because I'm not so sure we have a lot of wiggle room here. Sure, Your Honor. So Jones relied on Hyler. Right. And all of those cases talked about direct and indirect force, relying on Castleman, applying Castleman to... And they were all felony cases, Jones and Hyler. They were felony cases. And they said second degree murder. I think it was Alabama, second degree murder. Jones was, I think, Florida, but you may remember more correctly than me. So how do we write around that precedent here? It may be wrong. I'm not sure how we write around that. Well, the question of omission was not actually before the court. So in Jones... Okay. So in Jones, Hyler, the one I can't pronounce, did... Because it wasn't argued? It wasn't argued. Okay. So the opinion doesn't address it. That's right. So that's the only way you go around it. Well, I would also point out that in Jones, this court held that the difference in intent between second degree murder in Florida and first degree murder was irrelevant. And that the ACCA clause... I'll read from the opinion, which is in the government's post-Stokling letter brief. The mens rea distinction between different degrees of murder makes no difference to the determination under the ACCA elements clause. That's why it is that Steinberg creates a realistic possibility that second degree murder can be committed by omission. Because first degree manslaughter, which is the crime at issue in Steinberg, is the lesser included offense. The only difference being the intent. But those cases do hold that you can qualify, or the offense can qualify if there's an indirect act. Yes. Okay. So they do... Indirect, yes. Indirect act. Okay. The difference is act, right? So an omission being a culpable failure to act, that question has not been, as far as I'm aware, before the court, and it hasn't been answered. Which is why Mr. Sanchez is focused on it here. So I think... And I don't want to put words in Judge Hall's mouth or anything, and you'll let me know if I've got it wrong, but I think what Judge Hall is asking, by starting with the definition of the crime, right, is because New York defines omission as an act, then why wouldn't it qualify under our precedent? Does that... Do I have that right? She's gotten me confused, so I don't know. All right.  I thought it was pretty clear, but... Because New York qualifies as an... Because New York law defines omission as an act, why wouldn't an omission qualify, then, as an act, under our 11th Circuit precedent? Well, I respectfully don't believe that New York defines an omission as an act. I think that what New York has held is that you can commit an intentional homicide by omission and act. They're not doing a force analysis. They're not doing, is it an act, or it isn't, they're saying it doesn't matter. You can kill someone intentionally through omission. But if New York law has a separate provision that defines omission as act, then what is your position on that? Well, the way that New York law defines an omission is the failure to perform a legally imposed duty. That's in Steinberg. So that's... It doesn't define it as an act. That's how I would read that statute. Okay. Thank you. Thank you. Good morning, and may it please the Court. My name is Eileen Cannon on behalf of the United States. Seated with me at council table is Fritz Shadley, who represented the government in the District Court. Mr. Sanchez's sentence should be affirmed because both of the convictions he challenged as qualified categorically as violent felonies under the elements clause of the Armed Career Criminal Act. I'll turn directly to the murder discussion. It's the government's position that attempted murder unmistakably involves the use of physical force against the person of another. That conclusion, we believe, is dictated by the Supreme Court's decision in Castleman and this Court's post-Castleman precedents. Except that Castleman is... Castleman specifically says, we're dealing with a misdemeanor. The definition for use of force in a misdemeanor is different. It's dependent on the common law. And it's different from what it is under Curtis Johnson, where we specifically said it's not the same as what it is under the common law. Do you agree that that's a fair sort of explanation of both of those cases? Well, I would agree that Castleman arises in the context of a misdemeanor crime of domestic violence. But the discussion in Castleman for why it doesn't matter whether the harm is employed directly or indirectly, I think goes straight, isn't limited, I would say, to the context of, to the domestic violence context. And this Court hasn't read it to be so limited. Because this Court has relied on that logic in Castleman in all of its murder precedents, including Hyler and Jones and Thompson, and of course, in Vail-Baylon. I agree that it's been read that way by this Court. But if we go back to the source material and we read through the source material, the source material is talking about it in the common law sense. In fact, it says, when it's talking about poisoning, it says, this is the same sentence that I read to opposing counsel, it is impossible to cause bodily injury without applying force in the common law sense. And so, you know, obviously we're bound by what we've said. But just from the standpoint of whether it's right, which is important here because we're talking about an omission, which is something we haven't talked about yet. But my question for you is, why does Castleman really apply here if it's just talking about the common law definition of force and the common law definition of force doesn't apply to second-degree murder? I mean, maybe the answer is the common law definition of force does apply to second-degree murder after Stoeckling. I don't know. Your opposing counsel says that it doesn't because the reason that the Supreme Court applied the common law definition in Stoeckling was because it went back and it looked at the history of the statute and it talked specifically about burglary and robbery. And so that's why the common law applied there. But it didn't talk about murder or attempted murder. So it wouldn't apply here. So I don't know what your thoughts are on that. It's a lot, and I'm sorry. No. I mean, I think whether you use the common law definition of force or you use the Curtis Johnson culpability standard, which is reinforced in Stoeckling, you reach the same result, which is that intentionally causing the death of another necessarily as a matter of law constitutes the use of physical force. Okay. But here's the problem with that, right? If touch does not equal physical force, and we can all agree, I think, that Curtis Johnson said touch does not equal physical force. Would you agree with me on that? Yes. Okay. And the reason that Curtis Johnson said that is because even though touch would be force under the common law definition, we're not using the common law definition, right? Isn't that what it said? Yes. Okay. So if touch is not physical force, and we're not using the common law definition, how can not acting at all be physical force? I mean, that just seems to be a logical disconnect. Well, I think it's our position that in New York, under New York Penal Law 15.00, to act means either to perform an act or to omit to perform an act. So this is not doing nothing. This is making a deliberate decision to withhold food from a starving child in a very malicious and gruesome way over presumably several days. So that's not doing nothing. I guess it gets back to my question, which is, doesn't liability under ACCA for second-degree murder then depend on whether we use the common law definition or we don't use the common law definition? I mean, I completely can see where you're coming from on the common law definition. I'm not following your reasoning under the non-common law definition, because you are going back to Castleman, which relies on the common law definition. And then Stoeckling, which, again, relies on common law, and it specifically says it's doing so because it's involving burglary or robbery, which the ACCA refers to specifically. I mean, I don't think you need the common law definition of force to conclude that New York attempted second-degree murder qualifies. You could proceed under the Curtis Johnson potentiality standard. And certainly, intentionally causing the death of another is capable of causing physical pain or injury, because it has. And we know that it's impossible to cause physical injury without using physical force within the meaning of the armed curcumstance. Well, let's just say, I mean, I hate to get back to this, but let's say you touch someone, and it does cause their death. And I mean, it sounds crazy that it could happen, but there are fluky situations where something like that could occur. You know, maybe you're playing a joke on someone. They're sitting in a chair by a window, and you sneak up on them and touch them, and they get scared and jump and whatever. There's an open window. I don't know. It's a crazy scenario. But the point is, fluky things could maybe happen. I mean, it seems to me like if that's not enough to qualify as physical force, then how can doing less than that qualify as physical force? Well, as far as those sort of fluky hypotheticals, I think this Court's en banc decision in Vail Bailon is quite illustrative, because the point is that when you have an offense that requires as an element the causation of serious physical injury or death, then you necessarily have the use of physical force. I'm glad you said that, because Curtis Johnson saying touch was a battery statute where it had no requirement that the act or omission cause death or serious bodily injury. No requirement that you have the intent to do that. So that's why touch in Curtis Johnson, it is what it is. It was a simple battery case, whereas this has an element of intent to cause, well, Curtis Johnson, death. That's correct, Your Honors. And so that's why touch here, or whatever, or an omission here, is not inconsistent with, I mean, that's your argument, as I understand it. Yes. And it seems to me- But force is force. Physical force is physical force. And we're talking about physical force, which has been defined in Curtis Johnson as use of violent force, that type of thing. And I mean, it seems to involve some kind of an act. I'm not disagreeing with you with respect to the common law definition. I think there's, that's why I'm saying it would be helpful to me if you explain to me why the common law definition is the one that applies here, and perhaps respond to opposing counsel's argument that battery, that the common law definition doesn't apply solely to battery and, I'm sorry, burglary and robbery offenses. I apologize if I'm not answering the question. I think, really, you can just revert directly to the culpability standard that's reinforced in Stokeling. Whether common law is the deciding factor as to force in the murder context, I don't think is the proper inquiry. Because what matters is if the conduct is capable of causing physical pain or injury, and we know that's the case. And in Castleman, for example, the sprinkling itself didn't even require the touching of the victim. Technically, you could just put poison in a cup and the victim drinks it. And the Supreme Court, in that context, specifically says it doesn't matter. That's what I was going to ask, if I may, actually. Isn't it that an omission is not less in degree than a slight touching, but it's simply an issue of a different kind? Right? It seems that an omission is of a different sort of category, rather than a lesser category than a slight touch. Does that make sense? Yes. I mean, we view sort of an omission as really an act. Because in the end, you're making a deliberate decision to withhold medical care with the intent to kill or food. And so I guess we resist the idea that this is the so-called pure omission. Because there's really an act very much bound up in that decision. And I think the reason why the Supreme Court in Castleman makes that very clear, that it's impossible to cause physical pain or injury without the use of physical forces, because it doesn't matter whether the harm is caused directly or indirectly. And it's about employing that device through physical bodies. Can I just ask you, though, and I understand what your position is with respect to why you think it is physical force being used, even under Curtis Johnson. But can you address the other question, which is, what is your response to, just assume for purposes of this question, the common law definition of physical force. Let's assume that for whatever reason, we don't agree with you on that, OK? So then the question is, why does the common law definition of force then apply to second degree murder here under Stokelyn? Can you just respond to opposing counsel's argument? Well, the discussion in Stokelyn about the common law definition of force is really in the robbery context. And it's a deep dive into what was considered robbery in the common law, which is why the court focuses on that element of overcoming victim resistance. I don't think that's a direct transplant to the murder context, which is why the Curtis Johnson culpability standard ultimately carries the day, and which is why Stokelyn makes it a point to say that what it's doing in its analysis is fully compatible with the Curtis Johnson. OK, I think I understand. Maybe you can just let me know. Are you saying, then, that the common law definition of force, of physical force, does not govern the outcome here? Are you agreeing with that? I honestly don't have a well-considered view on whether the common law governs the outcome here. I would just, again, you know. I asked a bad one. Let me ask it to you this way. If the common law definition of force governs the outcome, do you agree that this is not a violent crime? No, I do not. I think murder in all its forms unmistakably qualifies as a violent felony. And I don't believe any court has said that murdering somebody isn't a violent felony. And let me ask you this, then. Let's assume, just for purposes of this question, that Curtis Johnson's definition of physical force doesn't get you by here. And we need the common law definition to get you by. Is it your position that Stoeckling does not allow the use or does not require the use of the common law definition of physical force? I don't know. I don't believe that Stoeckling was once and for all declaring that the common law use of force governs all inquiries into specific convictions. That was inevitably a robbery-focused decision. There have been other contexts where the common law has sort of won the day, such as in Castleman. But the bottom line is that in Castleman, it's not about the action that initiates the consequence. It's the causation of the consequence itself, which is, in this case, death. And you're certainly employing a device, i.e., starvation, in a physical way through concrete bodies, using the Curtis Johnson terminology, to cause the death of a human being. So your position, then, is that the case rises or falls, that is, this crime of second-degree murder either is or is not a violent felony dependent solely upon the Curtis Johnson definition of, which is the, which would be the non-common law definition of force, as you would say that it has been construed through Castleman, even though I think Castleman is a common law decision. I don't think that we absolutely cannot win without the Curtis Johnson definition. If you were to analyze the common law meaning of force in the Stoeckling terminology, you would have an offender overcoming the victim's resistance. And in the case of murdering somebody, you're certainly overcoming their resistance to live, I would say. And you're deliberately employing a device to kill them. I just can't imagine a construct in which killing another person intentionally ever could be deemed not a violent felony. And frankly, I think it makes a mockery of the law to even suggest as much, because we're talking about killing another human being. I don't think any court has been willing to say that murdering someone isn't a violent felony. And I don't believe this court should do so precisely because of its murder precedents in Hyler and Jones. Look, I agree with you. If we did things by the way things sound, absolutely. There's no question that murder is a violent felony, but we can't do it that way. We have to apply the tests that the Supreme Court has laid out for us. And so while I respect what you're saying about why it sounds like murder is a violent felony, and you've obviously made an argument as to why the law requires it to be deemed as such, I don't think we can rely on, of course, murder is a violent felony. Would you agree with me on that? Of course. And so we're bound by the legal principles. And I think those are laid out quite clearly in cases like Vail Baylon and Thompson and Jones and Hyler. And other circuits, for example, have addressed this, you know, omission theory in Peoples and in Waters, Eighth and Seventh Circuit decisions, and both have concluded that the deliberate withholding of food from a starving person qualifies as the use of physical force. And whether you do so directly or indirectly, you're nonetheless using physical force that's a concrete body. So I think this omission theory is, you know, creative, but it doesn't change the legal conclusion, which is that killing somebody intentionally constitutes the use of physical force. For those reasons and the other arguments made in our brief, we respectfully ask that you affirm the district court's sentence under the Armed Crew Criminal Act. Thank you. Yes. Thank you. Thank you, Your Honors. Can I point your attention to something, Madeline? Of course. So opposing counsel is saying that the reason why, or at least part of the reason why, an act, an omission to act can count as use of force, is that under New York State law, to perform an act or omitting to perform an act. And so when you look at omitting to perform an act, that's actually a positive act as opposed to just, you know, just sort of an omission, I guess, to the extent you can look at it. Do you want to address that? If we have to start with the definition of the conduct, we have to start with the definition of the crime that the state has given us, then the question is, why wouldn't an omission then count as an act, as a physical act of force, if it results in death, or if it is intended to result in death? I'm just not, and I apologize, I'm not sure. I may not be asking it clearly. Where that, where the definition. So the definition comes from New York Penal Law 1500 sections 4 and 5, I'm sorry, 15.00 sections 4 and 5. And I'm sorry, if I caught you off. That's totally fine. And so New York, in those sections, New York is saying that the failure to perform an act is the same as an act. It says, to act includes both performing an act or omitting to perform an act. I don't think that changes what we know an omission to be. It is, in fact, a failure to perform a legal duty. That's the other way the New York statute defines it. I don't think that we can change what an omission is. It has a legal definition, which I think that statute in itself is a little confusing, honestly. Basically, I don't think that that dictates the outcome here because we are applying the force clause, which of course has a federal definition. And we're asking, does a murder by omission or an attempted murder by omission fit into the force clause? And I know that the government, in its argument, said that no other court has found that a intentional homicide is not a crime of violence. And I note that peoples and waterers both rely on a strained interpretation of Castleman. And they basically cite Castleman for the argument that omissions can't count without noting that Castleman doesn't say a thing about omissions and focuses on the common definition of physical force. But in United States v. Mayo, the Third Circuit really did a very careful analysis. And in holding that aggravated assault did not qualify as a Philadelphia aggravated assault did not qualify as a crime of violence because it can be committed by omission, I'll note that in Pennsylvania, aggravated assault cited in Mayo can be a death. So in Mayo at, let's see, I guess this is the Westlaw version I have. At page 7, the court cites the Commonwealth v. Thomas. And Thomas, the defendant, was convicted of first degree assault after she starved her four-year-old son to death. And the Third Circuit goes on to hold that because this crime can be committed by omission, Castleman doesn't dictate the outcome. We can't pretend that the use of force is the same as an omission. The word force is in the text. The potentiality standard is not. And it also includes the word force. And the Third Circuit comes to the uncomfortable but inevitable conclusion that we ask your first degree ACCA predicates and therefore that his sentence must be vacated and his case remanded for sentencing. Thank you.